# Supreme Court of Louisiana

The Opinions handed down on the **29th day of June, 2017**, are as follows:

**BY PER CURIAM**:

**2017-B-0068**        **IN RE: HEATHER M. MURPHY**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the brief filed by the ODC, it is ordered that the name of Heather M. Murphy, Louisiana Bar Roll number 32068, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent shall make restitution to her former clients or to the Louisiana State Bar Association's Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

HUGHES, J., would disbar.

SUPREME COURT OF LOUISIANA

NO. 2017-B-0068

IN RE: HEATHER M. MURPHY

ATTORNEY DISCIPLINARY PROCEEDINGS

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Heather M. Murphy, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. *In re: Murphy*, 13-2947 (La. 12/27/13), 131 So. 3d 34.

**UNDERLYING FACTS**

*Count I – The Chouest Matter*

In August 2012, respondent began working for attorney Stephen M. Chouest. Four months later, Mr. Chouest terminated respondent's employment. Shortly thereafter, respondent contacted Mr. Chouest about some prospective clients who needed representation. Mr. Chouest received a copy of an e-mail that respondent sent to the prospective clients, in which she identified herself as an attorney with Mr. Chouest's law firm but provided her own cell phone number as the contact number. Mr. Chouest informed respondent that she would not be allowed to misrepresent herself as his current employee.

Later, respondent visited Mr. Chouest's office to deliver the prospective clients' files. However, she refused to deliver the files unless Mr. Chouest rehired

her. He refused, but he was ultimately able to undertake the representation of the clients with their full authorization and consent.

Thereafter, respondent attempted to persuade the clients to terminate Mr. Chouest's representation and hire her to represent them. To entice them, respondent offered the clients gift cards and basketball tickets. Respondent's husband also attempted to contact the clients to entice them to hire respondent and left several angry voicemail messages for the clients.

In January 2013, Mr. Chouest filed a disciplinary complaint against respondent. As part of the ODC's investigation of the complaint, the ODC's staff investigator interviewed LaTonya LaGarde, one of the clients. Ms. LaGarde confirmed that respondent misrepresented the status of her employment with Mr. Chouest. She also confirmed that respondent offered her family basketball tickets to entice them to terminate Mr. Chouest's representation and, instead, hire her. She further confirmed that respondent's husband left angry messages on her voicemail. As part of the ODC's investigation, the ODC also served respondent with a subpoena to obtain her sworn statement. Despite being served with the subpoena, respondent failed to appear for the sworn statement.

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 4.1 (truthfulness in statements to others), 4.2 (communication with persons represented by counsel), 7.4 (direct contact with prospective clients), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Count II – The Cheramie Matter*

Between January 2013 and July 2013, Debra Cheramie paid respondent a total of $3,700 to handle her parents' successions. Respondent did not deposit the

checks into a trust account because she did not maintain such an account. On her trust account disclosure statement, respondent indicated she does not maintain a trust account because she does not handle client funds.

Via an August 8, 2013 letter, Ms. Cheramie terminated respondent's services and demanded an accounting and refund of any unearned fees. Respondent did not provide either. Ms. Cheramie also demanded that respondent turn the files over to her new attorney, Steven Koehler. Although respondent met with Mr. Koehler on September 6, 2013, she failed to produce the files.

During the representation, respondent sent Ms. Cheramie e-mails indicating she had filed the succession pleadings with the court. However, when Mr. Koehler checked with the clerk of court, he learned nothing had been filed for either succession. When Mr. Koehler confronted respondent about this, she indicated she had "fax-filed" the succession pleadings. Mr. Koehler asked respondent to produce the confirmation return fax from the clerk of court, but she failed to do so.

In September 2013, Ms. Cheramie and Mr. Koehler filed a disciplinary complaint against respondent. Despite receiving notice of the complaint, respondent failed to file a written response or otherwise cooperate with the ODC's investigation.

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.5(f)(5) (failure to refund an unearned fee), 1.16(d) (obligations upon termination of the representation), 8.1(c), and 8.4(c).

*Count III – The Horn Matter*

In July 2013, Charles Horn paid respondent a $300 flat fee to defend him in traffic court. Respondent appeared at the arraignment and was notified of the

3

September 16, 2013 trial date. Respondent did not notify Mr. Horn of the trial date and did not appear at the trial on his behalf. As a result, a bench warrant was issued for Mr. Horn's failure to appear.

In October 2013, Mr. Horn filed a disciplinary complaint against respondent. Despite receiving notice of the complaint, respondent failed to submit a written response, necessitating the issuance of a subpoena to obtain her sworn statement. Despite being served with the subpoena, respondent failed to appear for the sworn statement and, thereafter, failed to cooperate with the ODC's investigation. As part of the ODC's investigation, the ODC's staff investigator interviewed Mr. Horn, who indicated he obtained the services of another attorney to have the bench warrant recalled. He also indicated that the other attorney advised him respondent had been interimly suspended from the practice of law in December 2013.

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4 (failure to communicate with a client), 1.5(f)(5), 8.1(c), and 8.4(c).

*Count IV – The Criminal Matter*

On October 21, 2010, respondent was arrested on charges of obtaining a controlled dangerous substance by fraud and deceit and altering a prescription. Respondent was allowed to resolve the charges through participation in a pre-trial diversion program, which she completed in October 2011. However, she failed to notify the ODC of her arrest or the disposition of the criminal charges against her.

In November 2013, respondent's former employer filed a disciplinary complaint, notifying the ODC of respondent's arrest. Despite receiving notice of the complaint, respondent failed to submit a written response or otherwise cooperate with the ODC's investigation.

4

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.1(c), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).

## Count V – The Keating Matter

On September 13, 2013, while employed by attorney Patrick Keating, respondent appeared in court to represent one of Mr. Keating's clients. At that time, and unbeknownst to Mr. Keating, respondent was ineligible to practice law for failing to pay bar dues and the disciplinary assessment. Mr. Keating fired respondent and, on October 30, 2013, obtained a preliminary injunction against her enjoining her from further contact with his clients because of her attempts to persuade them to retain her to handle their legal matters.

Mr. Keating filed a disciplinary complaint against respondent, but she failed to submit a written response. She also failed to provide the ODC with a sworn statement despite being served with a subpoena to do so.

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 5.5 (engaging in the unauthorized practice of law), 8.1(c), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

## Count VI – The Rabia Matter

In November 2013, Nouredine Rabia hired respondent to handle the expungements of his traffic citations. Mr. Rabia paid $400 as the full fee for the representation. Later, respondent requested an additional $350. Nevertheless, she took no actions to handle the matter for Mr. Rabia. She also failed to communicate

with Mr. Rabia about the status of his legal matter and has not refunded the unearned portion of the fee.

In January 2014, Mr. Rabia filed a disciplinary complaint against respondent. Notice of the complaint to respondent was returned unclaimed, and respondent failed to cooperate with the ODC's investigation.

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5 (fee arrangements), 1.15(a) (charging an unreasonable fee), 8.1(c), and 8.4(c).

*Count VII – The Webb Matter*

In the latter part of 2013, Carol Webb hired respondent to represent her in a child support matter. At the time, respondent was employed by attorney Patrick Keating, and she collected a total of $1,550 in fees from Ms. Webb. Thereafter, respondent failed to appear in court on Ms. Webb's behalf as scheduled.

Eventually, respondent's employment with Mr. Keating was terminated. Respondent managed to convince Ms. Webb that her failure to appear in court was Mr. Keating's fault and, ultimately, convinced Ms. Webb to allow her to continue with the representation. Ms. Webb also retained respondent to handle two malpractice claims, one of which was against Mr. Keating's law firm.

When respondent failed to keep Ms. Webb informed about the status of her legal matters, Ms. Webb contacted the court and learned respondent had failed to properly file the pleadings on her behalf. Later, Ms. Webb learned that respondent was interimly suspended from the practice of law during this time period.

Respondent failed to refund the unearned portion of the fee, despite requests from Ms. Webb to do so. Because of her financial circumstances, Ms. Webb was unable to afford to hire another attorney to represent her.

In April 2014, Ms. Webb filed a disciplinary complaint against respondent. Notice of the complaint mailed to respondent was returned unclaimed, and the ODC's further attempts to contact respondent were unsuccessful.

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 1.15(a), 8.1(c), and 8.4(c).

*Count VIII – The Unauthorized Practice of Law Matter*

On May 12, 2014, while she was interimly suspended from the practice of law, respondent appeared in court on behalf of her client, Vernon Green. On June 18, 2014, respondent called the judge's office and claimed that she had only just received notice of her interim suspension, despite the fact that she signed for the certified mail notice of the suspension on February 5, 2014.

In June 2014, the judge filed a disciplinary complaint against respondent. The ODC mailed notice of the complaint to respondent, but the letter was returned unclaimed. The ODC's further attempts to contact respondent were unsuccessful.

The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer), 5.5, 8.1(c), 8.4(c), and 8.4(d).

**DISCIPLINARY PROCEEDINGS**

In April 2015, the ODC filed formal charges against respondent. Respondent initially failed to answer the formal charges, and the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). After the hearing committee filed its report and recommendation in this matter, respondent filed a

7

motion to recall the deemed admitted order. Accordingly, the disciplinary board vacated the deemed admitted order, and the matter proceeded to a formal hearing on the merits.

*Formal Hearing*

The hearing committee conducted the formal hearing on March 29, 2016 and May 6, 2016. Respondent participated on the first day of the hearing, during which she provided testimony. She did not appear on the second day of the hearing and was not represented by counsel.[1] On the second day, the ODC introduced documentary evidence and presented the testimony of Deborah Cheramie, Steven Koehler, Stephen Chouest, Patrick Keating, Carol Webb, and Gwen Foret (a former client referred to respondent by Ms. Webb).

*Hearing Committee Report*

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the underlying facts set forth above. The committee further found that all of the ODC's witnesses provided credible testimony, which corroborated and supported the ODC's documentary evidence. The committee determined that respondent's testimony provided on the first day of the hearing was not credible or believable. She provided no exculpatory evidence or testimony, and she expressed no remorse or accountability for her misconduct. Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.

---

[1] Attorney Dane Ciolino appeared at the hearing to represent respondent and requested a continuance, which was denied. He then requested that he be allowed to withdraw from the representation due to respondent's lack of cooperation and participation, which request was granted.

The committee further determined that respondent's conduct caused actual, significant, and ongoing harm to her clients. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is disbarment.

In aggravation, the committee found the following factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. The committee found no mitigating factors present.

After considering respondent's conduct in light of the permanent disbarment guidelines, the committee recommended respondent be permanently disbarred. The committee further recommended respondent be ordered to make full restitution to all former clients to whom she owes reimbursement of unearned fees or other funds to which she is not entitled.

Neither respondent nor the ODC filed an objection to the hearing committee's report.

*Disciplinary Board Recommendation*

After review, the disciplinary board found that the hearing committee's factual findings are supported by the testimony and documentary evidence and are not manifestly erroneous. The board also found that the committee correctly determined respondent violated the Rules of Professional Conduct as charged.

The board then determined respondent intentionally violated duties owed to her clients, the public, the legal system, and the legal profession. Her conduct caused significant, actual harm to her clients. Her lack of cooperation during these proceedings caused unwarranted delay and wasted resources. The board agreed

with the committee that disbarment is the baseline sanction in this matter. The board also agreed with the aggravating factors found by the committee and agreed that no mitigating factors are present.

After considering respondent's conduct in light of the permanent disbarment guidelines and this court's prior jurisprudence, the board recommended respondent be permanently disbarred. The board also recommended respondent be ordered to make restitution to her former clients or the Client Assistance Fund, as appropriate.

Respondent filed an objection to the disciplinary board's recommendation. Pursuant to Supreme Court Rule XIX, § 11(G)(1)(b), the case was scheduled on our docket; however, respondent failed to file a brief and therefore waived her right to oral argument. Thereafter, the ODC filed a motion waiving its right to oral argument. We granted the ODC's motion and now consider the case based upon the record and the brief filed by the ODC.

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So.2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So.2d 150.

The record in this matter supports a finding that respondent neglected legal matters, failed to communicate with clients, failed to refund unearned fees, attempted to solicit clients from other attorneys, engaged in dishonest conduct,

10

made misrepresentations to the court, practiced law while ineligible to do so, engaged in the unauthorized practice of law after being placed on interim suspension, engaged in criminal conduct, and failed to cooperate with the ODC in its investigations. Based on these facts, respondent has violated the Rules of Professional Conduct as alleged in the formal charges.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

The record further supports a finding that respondent intentionally violated duties owed to her clients, the public, the legal system, and the legal profession. Her misconduct caused significant actual harm to several victims.

Both the hearing committee and disciplinary board recognized the baseline sanction for this type of misconduct is disbarment. Additionally, both the hearing committee and the disciplinary board concluded that respondent's offenses are so egregious that she should be permanently prohibited from applying for readmission to the bar.

The undisputed evidence in the record indicates respondent failed to refund at least $7,150 in unearned fees paid by her clients, effectively converting those funds to her own use. We acknowledge the total amount of these funds is relatively small in comparison to other cases in which we have imposed permanent disbarment. *See, e.g., In re: Woods*, 04-1543 (La. 10/29/04), 885 So. 2d 551

11

(lawyer permanently disbarred for converting over $100,000 in client funds); *In re: Morphis*, 01-2803 (La. 12/4/02), 831 So. 2d 934 (lawyer permanently disbarred for converting in excess of $2.5 million in client funds).

Nonetheless, neither our jurisprudence nor our guidelines for permanent disbarment emphasize the quantum of the funds converted as a consideration in determining whether permanent disbarment is appropriate. Rather, Guideline 1 focuses on "repeated or multiple instances" of conversion as well as the "substantial harm" caused by the conversion. Applying these factors, we have imposed permanent disbarment in cases where the total amount of the converted funds is not large. *See, e.g., In re: Meyer*, 13-2410 (La. 1/17/14), 131 So. 3d 43 (lawyer permanently disbarred based on multiple instances of conversion of client funds totaling $1,100, along with other misconduct).

In the instant case, respondent accepted fees from multiple clients and failed to perform any work on behalf of these clients. The hearing committee made a factual finding that these victims were vulnerable. It further found respondent's actions caused significant actual harm to her clients and this harm remained ongoing due to respondent's failure to make any effort at restitution. All of these findings are amply supported by the record. Accordingly, we find respondent's multiple instances of conversion, combined with the substantial harm created, satisfies the requirements of Guideline 1.

Moreover, the record establishes that respondent engaged in the unauthorized practice of law by representing a client in court after being placed on interim suspension. Such conduct clearly falls under Guideline 8 of the permanent disbarment guidelines (following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred).

12

In summary, respondent's actions demonstrate a clear disregard for her clients and for her duties as an attorney. In order to protect the public and maintain the high standards of the legal profession in this state, we find respondent's license to practice law in this state must be revoked, and she must permanently forfeit any opportunity to return to the practice of law in the future.

Accordingly, we will adopt the board's recommendation and permanently disbar respondent. We will also order respondent to make restitution to her former clients or to the Client Assistance Fund, as appropriate.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the brief filed by the ODC, it is ordered that the name of Heather M. Murphy, Louisiana Bar Roll number 32068, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent shall make restitution to her former clients or to the Louisiana State Bar Association's Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**06/29/17**

# SUPREME COURT OF LOUISIANA

# NO. 2017-B-0068

# IN RE: HEATHER M. MURPHY


# ATTORNEY DISCIPLINARY PROCEEDINGS


**Hughes, J., would disbar.**